UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CHRISTINA RAINVILLE, )
)
Plaintiff, )
)
v. ) Case No. 2:20-cv-0051
)
BOXER BLAKE & MOORE PLLC, formerly )
d/b/a ELLIS BOXER & BLAKE, PLLC, and )
BOXER BLAKE MOORE & SLUKA PLLC, )
)
Defendant. )

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND**
(Docs. 4, 23, 27, 34)

Plaintiff Christina Rainville brings this action against Defendant Boxer, Blake & Moore PLLC (the "Firm") alleging five causes of action against the Firm as her former employer: violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101; breach of contract; violation of Vermont's Fair Employment Practices Act, 21 V.S.A. § 495(a); breach of implied covenant of good faith and fair dealing; and fraudulent inducement.

On May 29, 2020, the Firm moved to dismiss Plaintiff's fraudulent inducement claim pursuant to Fed R. Civ. P. 12(b)(6). Plaintiff opposed the motion and the Firm replied on July 7, 2020. Thereafter, Plaintiff filed an Amended Complaint without consent of the Firm or leave of the court. On October 20, 2020, the Firm moved to strike the Amended Complaint and on November 3, 2020, Plaintiff opposed the motion.[1]

---

[1] In light of Plaintiff's subsequent motions for leave to amend the complaint, the Firm's motion to strike the Amended Complaint is DENIED AS MOOT.

On November 9, 2020, Plaintiff sought to rectify her error and moved for leave to amend the Complaint, seeking to add claims of negligent misrepresentation and omissions, violation of the Lanham Act, 15 U.S.C. § 1125, conversion, and respondeat superior liability for negligence. The Firm opposed the motion on November 23, 2020, and Plaintiff replied on December 4, 2020.

On January 13, 2021, before the court decided her motion, Plaintiff moved again for leave to amend her Complaint, seeking to add claims of conspiracy to intentionally inflict emotional distress, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision (the proposed "SAC"). In her SAC, Plaintiff seeks to add as Defendants Andrew Boxer, Esq., David Harlow, Esq., Downs Rachlin Martin, PLLC ("DRM"), and John Doe Insurance Companies (the proposed "New Defendants"). The Firm opposed the motion on January 26, 2021, and Plaintiff replied on February 8, 2021, at which time the court took the pending motions under advisement.

Plaintiff is self-represented. The Firm is represented by F. David Harlow, Esq., and Pietro J. Lynn, Esq.[2]

Rather than decide Plaintiff's serial motions in piecemeal fashion, the court considers leave to amend and the pending motion to dismiss in the context of the proposed SAC. Although Plaintiff is self-represented, the leniency the court typically affords to self-represented litigants does not apply when the litigant is an attorney. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (holding that "a lawyer representing himself ordinarily receives no [special] solicitude at all.").

I. **Allegations in the Proposed SAC.**

Plaintiff is a lawyer admitted to practice in Vermont who was employed by the Firm which operates as a partnership limited liability corporation in Springfield, Vermont. At the time of Plaintiff's employment, the Firm was known as Ellis Boxer & Blake, PLLC but is now known as Boxer Blake & Moore PLLC.

---

[2] Attorney Lynn entered an appearance solely to oppose Plaintiff's motion to amend to the extent it seeks to bring direct claims against Defendant's counsel, Attorney Harlow and DRM.

From June 1, 2016 until November 9, 2018, the Firm employed Plaintiff as Senior Counsel to manage partner Stephen Ellis, Esq.'s legal practice in the Springfield, Vermont area after Attorney Ellis moved to Burlington, Vermont. At the time of her hiring, Plaintiff had a reputation as a prosecutor in Vermont state courts. The Firm's offer of employment[3] to Plaintiff stated in relevant part:

> Your job title will be "Senior Counsel." Initially, you will provide support for the other senior lawyers in the firm in specific matters assigned to you. It is our expectation that you will assume primary responsibility for some matters in the very near future, and that you will work diligently to develop your own client base. You will also be expected to help train and mentor associate lawyers and support staff. We will endeavor to support you in these efforts. So long as you remain employed by our firm, you will practice law exclusively on behalf of our firm and its clients.
>
> While it is our hope that your relationship with the Firm will be lasting and mutually beneficial, your employment with the Firm will remain at will and may be terminated by either you or the Firm at any time without notice or cause. In addition, the Firm may change any of the terms and conditions of employment, at the Firm's sole discretion.

(Doc. 4-1 at 2-3.)

Plaintiff alleges that during the first eighteen months of her employment, she was given a substantial raise, had excellent employment reviews, and was a highly profitable lawyer at the Firm. However, she was not permitted to represent any criminal clients in state courts while employed by the Firm due to an alleged conflict of interest with the State of Vermont even though the Firm allowed another attorney to represent a client in state court on a criminal matter. Attorney Boxer, a partner at the Firm, encouraged Plaintiff to handle federal criminal cases although she did not have experience in federal court.

---

[3] The Firm has attached the offer letter as Exhibit 1 to its motion to dismiss. This document is properly before the court because it is incorporated by reference and integral to the SAC. *See Russo v. Navient Sols., LLC*, 2017 WL 4220455, *2 n.5 (D. Vt. Sept. 21, 2017) (holding that a court may "consider a document that is not incorporated by reference where the complaint 'relies heavily upon its terms and effect.'") (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

Plaintiff alleges that the Firm failed to advertise her employment until she had worked there for over a year and declined her requests to advertise with the Bennington County newspapers and on Google Ads. Plaintiff was also not sent to any workers' compensation conferences in Burlington while her younger co-workers were.

Plaintiff alleges that the Firm and Attorney Boxer intentionally failed to disclose the following facts which would have resulted in Plaintiff rejecting the Firm's offer of employment:

- "Mr. Ellis's workload had historically ebbed and flowed and thus, there was a known substantial risk that his workload would not be able to consistently support Plaintiff" (Doc. 34-3 at 129-30, ¶ 744.)
- A "situation whereby there was not enough work to sustain a lawyer who had been hired to support Mr. Ellis had occurred in the past." *Id.* at 130, ¶ 744.
- The Firm "had no present intention of supporting her effort to develop her practice at the time of the signing of the contract." *Id.* at 130, ¶ 745.
- "[T]he Young Partners did not want to hire someone who was older than they were, and they had no present intent of allowing her to be successful at the Firm." *Id* at 130, ¶ 746.
- "[T]he Firm had previously hired a highly-experienced lawyer who was substantially older than the Young Partners at the Firm, and that the Firm had forced that lawyer out within approximately 13 months, despite the fact that she was (and remains) an esteemed member of the Vermont bar." *Id.* at 130, ¶ 747.
- "Mr. Blake and the Firm intended to bar Plaintiff from representing criminal clients regardless of whether there was a real conflict." *Id.* at 130, ¶ 748.
- "[T]he Firm (and certainly the Young Partners) strongly preferred to hire a younger lawyer" and "only acquiesced because Mr. Ellis was desperately in need of a senior lawyer who could run his cases[.]" *Id.* at 130-31, ¶ 749-50.
- "[T]he Firm never intended to keep Plaintiff long-term." *Id.* at 131, ¶ 751.
- "Mr. Ellis had missed deadlines in his cases." *Id.* at 131, ¶ 752.

She asserts that, as a result of accepting the Firm's offer of employment, she lost other potential employment opportunities.

On December 4, 2017, Plaintiff was preparing a client for mediation with the Firm's paralegal, Diane Drake, and proposed that they split a gluten-free pizza. Ms.

4

Drake agreed and ordered a pizza. Plaintiff took three bites of the pizza before realizing that it was not gluten-free. She alleges that since consuming the pizza, she has suffered an array of medical conditions[4] and her sleep disturbance and "lapses in daily functioning" due to eating the pizza caused her to make mistakes throughout her employment with the Firm. (Doc. 34-3 at 51, ¶ 276.) She brought a workers' compensation claim against the Firm which was resolved in the Firm's favor.[5]

According to the proposed SAC, in order to prevent her from requesting accommodations or filing a workers' compensation claim related to her illness, the Firm's partners told Plaintiff that there was insufficient work available to support her position. While Plaintiff was employed at the Firm, it advertised that it was seeking to hire a new lawyer and allegedly hired a new associate shortly after Plaintiff resigned from her position. Plaintiff contends that due to the alleged misrepresentations by the Firm about the amount of work available, her resignation on November 8, 2018 was not voluntary.

Plaintiff further alleges that on its webpage, the Firm states:

> Appellate law requires a special kind of expertise. Our lawyers have successfully argued cases before the United States Supreme Court, the Vermont Supreme Court, and the United States Court of Appeals for the Second Circuit.

*Id.* at 134, ¶ 774. Plaintiff has previously successfully argued a case before the United States Supreme Court and asserts that no other lawyer at the Firm has done so. She alleges that the Firm "received financial benefits and reputational benefits at Plaintiff's

---

[4] These medical conditions include: severe abdominal pain, severe diarrhea, chronic sinusitis, acute pharyngitis, exacerbated asthma, inflammatory back pain, severe joint pain, fluctuating autoimmune hearing loss requiring hearing aids, chronic inflammation of the ankles, vitamin D deficiency, yeast infection of the throat, tachycardia, irregular heartbeats, partially collapsed lung, chronically swollen axillary lymph node, severe sleep disturbance, occasional lapses in daily cognitive functioning, damage to the corneas of her eyes, dry mouth, photosensitivity, muscular-skeletal disease, and other conditions.

[5] Pursuant to Fed. R. Evid. 201, the court takes judicial notice of *Rainville v. Boxer Blake & Moore PLLC*, state file No. LL-55774, opinion No. 02-21 WC (Jan. 21, 2021) (holding that Plaintiff's pizza consumption did not arise out of her employment and denying workers' compensation benefits on that basis).

expense due to the false advertising." *Id.* at 92, ¶ 546.

Plaintiff's allegations in the proposed SAC include claims pertaining to the Firm's conduct during the workers' compensation lawsuit and the instant litigation, including allegations that the emails of Justin Sluka, Esq., a former partner of the Firm, were intentionally destroyed less than ten weeks after Plaintiff notified the Firm that she had communicated to Mr. Sluka about her injury and illness. Plaintiff asserts that the Firm obstructed discovery in her workers' compensation case in order to conceal the destruction of these emails.

In a September 14, 2020 email to Plaintiff, Attorney Harlow, the Firm's counsel in this lawsuit, requested the return of all firm emails and documents which Plaintiff had retained after her resignation from the Firm. Plaintiff alleges that Attorney Harlow threatened her, stating "[s]hould you fail to comply with this request, the firm may avail itself of appropriate civil remedies." *Id.* at 95, ¶ 558 (emphasis omitted). Plaintiff further claims that Mr. Harlow made

> a series of additional false allegations, including that Plaintiff had made "threats of criminal repercussions against the firm and its members in the email she had sent Mr. Harlow and the email's attachment," (when, in fact, she had made no such threats) and that her "assertions appear to be improper use of the criminal process in violation of the Vermont Rules of Professional Conduct and may be otherwise unlawful."

*Id.* at 95, ¶ 559. Attorney Harlow sent two additional emails requesting that Plaintiff return the documents. Plaintiff asserts that Attorney Harlow engaged in this conduct for the Firm's benefit as well as for the benefit of the proposed New Defendants.

At an October 5, 2020 hearing regarding the document dispute, Attorney Harlow "made multiple arguments that were designed to make the process by which Plaintiff was to provide the records for *in camera* review as burdensome and stressful to Plaintiff as possible[,]" *id.* at 100, ¶ 585, including refusing to agree to Plaintiff's proposed deadline for reviewing the documents, requesting that Plaintiff turn over certain Westlaw emails, and requesting that Plaintiff produce emails that she contends are not relevant. Thereafter, Attorney Harlow also objected to Plaintiff's use of a vendor to review the disputed

documents and allegedly "made arguments that he knew were legally false and threatening to Plaintiff[,]" "falsely accused Plaintiff of violating the Court's Order[,]" "demanded contact information for the vendor so he could communicate with the vendor to find out if Plaintiff was telling the truth[,]" and "accused Plaintiff of 'clear miscomprehension' and 'miscomprehending the plain language' of the Protective Order[.]" *Id.* at 103, ¶ 598-99.

Plaintiff alleges that at the time Attorney Harlow engaged in this conduct, Defendants were aware that her medical condition could be exacerbated by stress and that Attorney Harlow engaged in this conduct "with the approval of his clients Mr. Boxer, the Firm, and the insurance company(ies) that employed him" in an alleged "scheme to cause distress[.]" *Id.* at 104-05, ¶¶ 607, 609. She further contends that the distress she felt due to this conduct caused a "severe exacerbation of [her] sleep disturbance" and the worsening of her autoimmune condition. *Id.* at 105, ¶ 610.

## II.   Conclusions of Law and Analysis.

### A.   Standards of Review.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.*

7

(citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

Plaintiff's fraudulent inducement claim must also satisfy the heightened pleading standard set forth in Fed. R. Civ. P. 9(b) which requires a claimant to "plead the circumstances that allegedly constitute fraud 'with particularity,'" *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014), although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "In essence, Rule 9(b) places two further burdens" on a plaintiff alleging fraud; the "first goes to the pleading of the circumstances of the fraud, [and] the second to the pleading of the defendant's mental state." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Although "mental states may be pleaded 'generally,' [the plaintiff] must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'" *Id.* (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).

Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has held a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "When a proposed amendment would add new parties, Rule 21, rather than Rule 15, governs." *Waite v. UMG Recordings, Inc.*, 477 F. Supp. 3d 265, 269 (S.D.N.Y. 2020). Under Rule 21, new parties may be added "at any times, on just terms[.]" Fed. R. Civ. P. 21. "In considering motions under Rule 21, courts apply the same liberal standard afforded to motions to amend under Rule 15(a)" and "a court's refusal to grant leave to do so is justified on the grounds of . . . undue delay and undue prejudice." *Waite*, 477 F. Supp. 3d at 269 (internal quotation marks and footnotes omitted).

8

"[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). "Amendment is futile where the problems with the complaint's claims are substantive and not the result of inartful pleading." *Biswas v. Rouen*, 808 F. App'x 53, 55 (2d Cir. 2020) (internal quotation marks and alterations omitted). Proposed amendments are "futile" when, even after amendment, the complaint fails to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

Where, as here, a party seeks to amend in response to a pending motion to dismiss, the court may consider the motion to dismiss in the context of the proposed amended complaint. *See Hamzik v. Off. for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 273-74 (N.D.N.Y. 2012) (finding that "[w]here a plaintiff seeks to amend his complaint while a motion to dismiss is pending, a court has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint"). "The party opposing amendment bears the burden of showing prejudice" or futility. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362, 370 (W.D.N.Y. 2018) (holding that "the party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile") (internal quotation marks, alterations, and citations omitted).

### B. Whether to Dismiss Count VI (Fraudulent Inducement) for Failure to State a Claim.

In Count VI of her proposed SAC, Plaintiff alleges that the Firm fraudulently induced her to enter into an employment contract by falsely representing that it would "endeavor to support" her efforts to develop her own client base and failing to disclose certain "facts" related to her employment. (Doc. 34-3 at 127, ¶ 724.) Plaintiff does not allege the Firm had a duty to disclose these facts to her or that it prevented her from investigating them herself. Presumably for that reason, she focuses her fraudulent inducement claim on the Firm's written offer letter which contains the "endeavor to

9

support" language.

Under Vermont law, "[a]n action for fraud and deceit will lie upon an intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage." *Lewis v. Cohen*, 603 A.2d 352, 354 (Vt. 1991) (quoting *Silva v. Stevens*, 589 A.2d 852, 857 (Vt. 1991)); *see also Citibank N.A. v. City of Burlington*, 971 F. Supp. 2d 414, 430 (D. Vt. 2013) (internal quotation marks omitted). Rather than identify "existing facts" that the Firm misrepresented, Plaintiff points to the Firm's characteristics, work flow, and quantity of work which the Firm did not disclose. Under Vermont law, "[f]ailing to disclose information is not fraudulent unless one has an affirmative duty to disclose, as in a confidential or fiduciary relationship." *Lay v. Pettengill*, 2011 VT 127, ¶ 17, 191 Vt. 141, 150, 38 A.3d 1139, 1145. Plaintiff cites no authority for the proposition that an employer has an affirmative duty to disclose deficiencies in its personnel and operations when offering employment and the court has found none.[6] Plaintiff's allegation that the Firm promised to "endeavor to support" her fares no better

---

[6] *See Gason v. Dow Corning Corp.*, 674 F. App'x 551, 558 (6th Cir. 2017) (applying Michigan law and holding that an employer "had no duty to disclose that it would put the brakes on [plaintiff's green-card] application" after she was demoted); *Sneyd v. Int'l Paper Co.*, 142 F. Supp. 2d 819, 823 (E.D. Mich. 2001) (finding "no legal authority for the proposition that a corporation has a duty to disclose to potential employees that it is contemplating the sale of, or has decided to sell, a subsidiary corporation"); *Gouge v. BAX Glob., Inc.*, 252 F. Supp. 2d 509, 517 (N.D. Ohio 2003) (finding no duty to disclose where plaintiff had "cited no legal authority for the proposition that as a job applicant, he was entitled to learn of [employer's] interest in [acquiring another company]"); *Mackenzie v. Miller Brewing Co.*, 680 N.W.2d 331, 341, 344 (Wis. Ct. App. 2000) (holding that " the creation of an employer's duty to disclose information potentially affecting an employee's decision to continue employment would undermine sound public policy" because "employers, for any number of valid reasons, may choose to conceal important information from employees"); *Moore v. St. Joseph Nursing Home, Inc.*, 459 N.W.2d 100, 103 (Mich. Ct. App. 1990) (concluding that "a former employer has no duty to disclose malefic information about a former employee to the former employee's prospective employer"); *see also Stowman v. Carlson Cos.*, 430 N.W.2d 490, 493 (Minn. Ct. App. 1988) (holding that "the law does not provide relief to an employee who expected job security based on the reputation of the company or on the personal reputation of the company's owner").

10

because this statement is too vague and ambiguous to support a claim of fraud as there is no objective means of testing its truth or falsity.[7]

Even if Plaintiff could identify a firm and definite misrepresentation of existing fact, "general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (internal quotation marks, alteration, and citation omitted); *see also MMCT, LLC v. JTR Coll. Point, LLC*, 997 N.Y.S. 2d 374, 376 (2014) (holding that "[a] fraud-based claim is duplicative of breach of a contract claim when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract") (internal quotation marks omitted). "[T]he fraud must be extraneous to the contract, rather than a fraudulent nonperformance of the contract itself." *Bevins v. King*, 514 A.2d 1044, 1045 (Vt. 1986). As the Vermont Supreme Court has explained, "principles of contract and principles of fraud must be kept separate and distinct for '[i]f every broken promise were to constitute fraud, . . . the resulting instability would severely impair the conduct of business." *Id.* at 205 (quoting *Union Bank v. Jones*, 411 A.2d 1338, 1343 (Vt. 1980)); *see also Buckman v. Caylon Sec. (USA) Inc.*, 817 F. Supp. 2d 322, 334 (S.D.N.Y. 2011) (finding that "[t]he Second Circuit has drawn a distinction between 'promissory statements as to what will be done in the future, which give rise only to a breach of contract claim, and . . . false representations of present fact, which give rise to a separable claim of fraudulent inducement.'") (quoting *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992)) (internal quotation marks, footnote, and alteration omitted).

Because Plaintiff has not plausibly alleged the essential elements of a fraudulent

---

[7] *See Cartwright v. D'Alleva*, 782 F. App'x 77, 78 (2d Cir. 2019) (holding that statements concerning a company's financial health were "too vague to be materially misleading"); *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 353 (S.D.N.Y. 2020) (holding that "vague and general statements of optimism cannot form the basis for a fraudulent inducement claim") (internal quotation marks and citation omitted); *see also Graaf v. N. Shore Univ. Hosp.*, 1 F. Supp. 2d 318, 324 (S.D.N.Y. 1998) (holding that plaintiff's allegation that he "was led to believe that he would be supported in his work, and also that he would not experience discrimination and/or retaliation" was "too vague to maintain" a claim of fraud.); *Int'l Oil Field Supply Servs. Corp. v. Fadeyi*, 825 N.Y.S. 2d 730, 734 (2006) (holding that "[v]ague expressions of hope and future expectation provide an insufficient basis upon which to predicate a claim of fraud").

inducement claim, the Firm's motion to dismiss that claim (Count VI) is GRANTED and Plaintiff's request for leave to amend to add that claim is DENIED on futility grounds.

### C. Whether Plaintiff has Plausibly Pled a Lanham Act Claim.

Plaintiff alleges that the Firm and Attorney Boxer violated the Lanham Act, 15 U.S.C. § 1125(a) and (c), by representing on the Firm's webpage that its lawyers had successfully argued cases before the United States Supreme Court after Plaintiff left the Firm. The Firm contends that its statement was not false, nor did it cause injury to Plaintiff.

"To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016) (citing *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255-56 (2d Cir. 2014)).[8] "To establish literal falsity, a plaintiff must show that the advertisement either makes an express statement that is false or a statement that is 'false by necessary implication,' meaning that the advertisement's 'words or images, considered in context, necessarily and unambiguously imply a false message.'" *Id.* (quoting *Time Warner Cable, Inc. v.*

---

[8] Pursuant to the 15 U.S.C. § 1125(a):

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristic, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> Shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

*DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007)). "A message can only be literally false if it is unambiguous." *Id.*

Plaintiff claims that the Firm has "diluted by tarnishment the value of Plaintiff's mark, as described below, in violation of 15 U.S.C. § 1125(c)[.]" (Doc. 34-3 at 134, ¶ 776.) As the Firm correctly points out, the alleged mark to which she refers, that she has argued before the United States Supreme Court, is not a "famous mark" within the meaning of the Lanham Act, 15 U.S.C. § 1125(c)(2), which is limited to a mark that "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." Plaintiff has not and cannot allege that the phrase "argued a case before the United States Supreme Court" is widely recognized as referring to her services. *See Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 414 (S.D.N.Y. 2012) (holding that "to establish a claim under [the Lanham Act], a plaintiff must first show that he has a valid mark entitled to protection."). On this basis alone, her Lanham Act claim is futile.

To the extent Plaintiff has alleged falsity at the pleading stage, she has failed to allege that the Firm's use of the phrase describing its attorneys' experience has caused any actual or likely injury to her as a result. "Under the Lanham Act, injury is typically demonstrated where a plaintiff can demonstrate harm to its 'commercial interest in reputation or sales.'" *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 377 F. Supp. 3d 337, 346 (S.D.N.Y. 2019) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014)). "To prove a likelihood of injury [plaintiff] must also show a logical causal connection between the alleged false advertising and its own sales position." *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir. 1980). "[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. "[T]he likelihood of injury and causation will not be presumed, but must be demonstrated." *Johnson & Johnson*, 631 F.2d at 190. At the pleading stage it is not enough to make conclusory allegations regarding the element of

causation, rather those allegations must be both plausible and contain the facts upon which they are based. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In her proposed SAC, Plaintiff asserts that she "has not been working as a lawyer since 2018[.]" (Doc. 34-3 at 137.) She does not allege that she was in competition with the Firm during the relevant period, nor does she plausibly allege that a statement on the Firm's website has taken business from her or damaged her professional reputation. While she alleges that the Firm and Attorney Boxer have benefitted financially from the use of this statement, a conclusory allegation that Plaintiff "has been damaged and/or is likely to be damaged by the Firm's false statements" will not suffice. *See Iqbal*, 556 U.S. at 678 (holding that a complaint may be dismissed "if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and alterations omitted). Plaintiff's motion for leave to amend to add a Lanham Act claim is therefore DENIED as futile.

### D. Whether Plaintiff has Plausibly Pled a Claim for Conversion.

Plaintiff alleges that "[b]y falsely advertising on its webpage that the Firm has 'lawyers who have argued cases in the United States Supreme Court . . . ,' the Firm and [Attorney] Boxer have wrongly converted Plaintiff's reputation, property, and unique expertise and accomplishments to its own wrongful use[.]" (Doc. 34-3 at 137.) To establish a claim for conversion under Vermont law, a plaintiff must allege that the defendant "has appropriated the property to that party's own use and beneficial enjoyment, has exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title." *P.F. Jurgs & Co. v. O'Brien*, 629 A.2d 325, 328 (Vt. 1993).

"[T]he tort of conversion traditionally applied only to tangible goods, but has since expanded to include intangibles merged in documents such as bonds, stock certificates, bills of exchange, money, and negotiable instruments[.]" *Montgomery v. Devoid*, 2006 VT 127, ¶ 12 n.1, 181 Vt. 154, 160, 915 A.2d 270, 275. It has not, however, been extended to include an intangible property interest in a person's reputation. *See*

Restatement (Second) of Torts § 242 cmt. f (noting that "the prevailing view [is] that there can be no conversion . . . of such intangible rights as the goodwill of a business or the names of customers."); *see also In re Chateaugay Corp.*, 156 B.R. 391, 400 n.10 (S.D.N.Y. 1993) (applying New York law and noting that "New York law does not recognize conversion of intangible property rights unless merged in, or identified with, some document, or unless those rights relate to specifically identifiable money").

While Plaintiff alleges she is the only employee of the Firm who has argued successfully before the United States Supreme Court, neither this experience nor the phrase "argued cases before the United States Supreme Court" is her tangible property or her intangible property merged into a document capable of conversion. Because Plaintiff fails to plausibly allege the essential elements of a claim of conversion, her motion for leave to amend the complaint to add Count IX (Conversion) is DENIED as futile.

E.  **Whether Plaintiff's Negligence Claims are Barred by 21 V.S.A. § 622.**

Plaintiff asserts claims for negligent misrepresentation and omissions (Count VII) and negligence in causing her injury related to her consumption of a non-gluten free pizza (Count X). The Firm contends that both claims are barred by the workers' compensation exclusivity provision, which "allows employees to receive workers' compensation for injuries sustained while working, but prevents them from bringing negligence claims against their employer for their injuries." *Garger v. Desroches*, 2009 VT 37, ¶ 4, 185 Vt. 634, 635, 974 A.2d 597, 599.

> Under 21 V.S.A. § 622:
>
> the rights and remedies granted by the provisions of this chapter to an employee on account of a personal injury *for which he or she is entitled to compensation* under the provisions of this chapter *shall exclude all other rights and remedies of the employee*, the employee's personal representatives, dependents, or next of kin, *at common law or otherwise on account of such injury*.

21 V.S.A. § 622 (emphasis supplied).

"[T]he exclusivity provision bars any claim against an employer short of intentional injury." *Dunham v. Chase*, 674 A.2d 1279, 1281 (Vt. 1996). However, a

15

plaintiff is not precluded from "filing both a workers' compensation claim and a civil action, subject to an eventual determination of which remedy is appropriate if they prove to be inconsistent." *Gallipo v. City of Rutland*, 789 A.2d 942, 947 (Vt. 2001); *see also Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 14 P.3d 234, 243 (Cal. 2001) (applying California's Workers' Compensation act and holding that "[i]n determining whether exclusivity bars a cause of action against an employer or insurer, courts initially determine whether the alleged injury falls within the scope of the exclusive remedy provisions").

Plaintiff does not allege that she has recovered workers' compensation benefits and the court takes judicial notice that her workers' compensation claim was decided in the Firm's favor on the basis that the injury did not arise out of her employment. *See Gallipo*, 789 A.2d at 946 (holding that plaintiff's discrimination claims in state court were not barred because "[t]he [exclusivity] section applies only where the employee is 'entitled to compensation under the provisions of this chapter.' As of the time that the superior court acted, there had been no decision that plaintiff was entitled to workers' compensation, and the city was arguing that he was not so entitled."). Plaintiff's negligence-based claims are therefore not futile based on the exclusionary bar. Because the Firm raises no other ground for denying leave to amend and the court declines to address additional grounds *sua sponte*, Plaintiff's motion for leave to amend and assert Counts VII and X is GRANTED.

### F. Whether Plaintiff has Plausibly Pled her Emotional Distress Claims.

Counts XI, XII, XIII, and XIV assert claims for intentional and negligent infliction of emotional distress against all Defendants and negligent supervision against DRM and John Doe Insurance Companies for Attorney Harlow's conduct in connection with a dispute regarding Plaintiff's retention of certain emails. The Firm contends that Plaintiff's claims are barred by the litigation privilege, seek non-compensable damages for litigation-induced stress, and fail to state a claim for which relief can be granted.

"Litigation immunity is the common law doctrine that protects parties, witnesses, lawyers, and judges as participants in the judicial process from liability for acts and

16

conduct related to a proceeding." *Pease v. Windsor Dev. Rev. Bd.*, 2011 VT 103, ¶ 28, 190 Vt. 639, 645, 35 A.3d 1019, 1027 (internal quotation marks and citation omitted). "To claim 'full immunity' under Vermont law, the challenged statements must have been 'pertinent to the matter in hand.'" *Kucera v. Tkac*, 2014 WL 6463292, at *18 (D. Vt. Nov. 17, 2014) (quoting *Letourneau v. Hickey*, 807 A.2d 437, 441 (Vt. 2002)). The absolute privilege "has been applied not only to statements made in pleadings and in court, but also to statements made[] in a letter from an attorney to subpoenaed witnesses,[] in letters between attorneys and parties or communications by attorneys to the court, [and] during offers of settlement by attorneys[.]" *O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995) (citations omitted).

In the proposed SAC, Plaintiff alleges that the Firm and the proposed New Defendants engaged in a course of intentional conduct which caused her emotional distress by adopting positions on issues before the court that were intentionally coercive and adverse to her interests. Each statement and act alleged, however, was "pertinent to the matter in hand" because they related to a dispute pending before the court regarding Plaintiff's document retention. *Leteourneau*, 807 A.2d at 441 (citation omitted). Because these statements were made in conjunction with judicial proceedings, even if distressing, they fall squarely within the litigation privilege. *See Vt. Hard Cider Co. v. Ciolek*, 2012 WL 761304, at *3 (D. Vt. Mar. 7, 2012) (holding that "since the alleged defamatory statements were 'published by [a party] in the course of judicial proceedings,' and 'bear some relation to the proceedings,' they are absolutely privileged") (quoting *Okemo Mountain Inc. v Sikorski*, 2006 WL 335858, at *3 (D. Vt. Feb. 14, 2006)); *HC2, Inc. v. Delaney*, 2020 WL 7480675, at *13 (S.D.N.Y. Dec. 18, 2020) (holding that "[a]s to statements made . . . in the course of this lawsuit, such statements are 'absolutely privileged as long as they are pertinent to the subject of the litigation. Such statements therefore cannot form the basis for an IIED claim") (internal quotation marks and citation omitted); *Brady v. John Goldman, Esq.*, 2016 WL 8201788, at *8 (S.D.N.Y. Dec. 6, 2016) (finding that "[c]ases relying on statements made in the context of adversarial litigation have been summarily dismissed under [the IIED] standard").

17

Plaintiff's emotional distress claims are subject to dismissal for the further reason that "[s]tress and anxiety normally attend the litigation process. For this reason, the majority of courts addressing litigation-induced stress have treated it as a non-compensable component of damages regardless of whose actions necessitate the litigation." *Picogna v. Bd. of Educ. of Tp. of Cherry Hill*, 671 A.2d 1035, 1038 (N.J. 1996) (collecting cases); *Knussman v. Maryland*, 272 F.3d 625, 642 (4th Cir. 2001) (noting that "[g]enerally speaking, litigation-induced emotional distress is never a compensable element of damages"); *Zimmerman v. Direct Fed. Cred. Union*, 262 F.3d 70, 79 (1st Cir. 2001) (observing that "the heavy weight of authority holds that litigation-induced stress is not ordinarily recoverable as an element of damages"); *see also Tighe v. Purchase*, 2015 WL 1962304, at *5 (W.D. Pa. May 1, 2015) (holding that "it is universally recognized that litigation-induced stress is not recoverable as an item of compensatory damages") (collecting cases). Although Plaintiff claims that she is not alleging litigation-induced emotional distress, she alleges no other interactions with Attorney Harlow, DRM, or the John Doe Insurance Companies.

As a result, even accepted as true, Plaintiff's allegations that the opposing party and its attorneys intentionally caused her emotional distress fail as a matter of law to state a plausible claim for relief.[9] Because the claims in Counts XI (Conspiracy to Intentionally Inflict Emotional Distress), XII (Intentional Infliction of Emotional Distress), XIII (Negligent Infliction of Emotional Distress), and XIV (Negligent Supervision) of the

---

[9] *See Stoleson v. United States*, 708 F.2d 1217, 1223 (7th Cir. 1983) (noting that "[i]t would be strange if stress induced by litigation could be attributed in law to the tortfeasor. An alleged tortfeasor should have the right to defend himself in court without thereby multiplying his damages"); *Martinez v. Cap. One Fin. Corp.*, 2016 WL 818709, at *4 (D.N.J. Mar. 1, 2016) (dismissing plaintiff's claim for intentional infliction of emotional distress based on defendant's assertion that it could foreclose on plaintiff's property because "litigation-induced distress damages cannot be recovered.") (internal quotation marks and citation omitted); *Park-Ohio Indus., Inc. v. Tucker Induction Sys., Ltd.*, 1987 WL 1377908, at *5 (E.D. Mich. Oct. 21, 1987) (holding that an individual could not state a claim that the stress of litigation shortened his life span because "[l]itigation induced stress is not a recognized cause of action, especially where [the individual] is the plaintiff. To hold otherwise would penalize [defendant] for defending the suit.").

SAC are futile, Plaintiff's motions for leave to amend to assert those claims and to add Attorney Harlow, DRM, and John Doe Insurance Companies as defendants are DENIED.

### G.     Whether Plaintiff May Add Attorney Boxer as a Defendant.

The Firm contends that Plaintiff's individual claims against Attorney Boxer are barred under 11 V.S.A. § 4042(a) because, at all relevant times, Attorney Boxer was a member of the Firm which is a limited liability company. 11 V.S.A. § 4042(a) states:

> The debts, obligations, or other liabilities of a limited liability company, whether arising in contract, tort, or otherwise:
>
> (1)    are solely the debts, obligations, or the liabilities of the company; and
>
> (2)    do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or the manager acting as a manager.

11 V.S.A. § 4042(a).

In her proposed SAC, Plaintiff fails to allege that Attorney Boxer acted in any capacity other than as a member of the Firm. Indeed, Plaintiff has simply added Attorney Boxer's name next to numerous allegations against the Firm. Pursuant to § 4042(a), she does not plausibly allege a factual or legal basis to hold Attorney Boxer individually liable. Her motion for leave to add Attorney Boxer as a Defendant is therefore DENIED as futile.

### CONCLUSION

For the foregoing reasons, the court GRANTS the Firm's motion to dismiss Plaintiff's fraudulent inducement claim (Doc. 4) and DENIES AS MOOT the Firm's motion to strike Plaintiff's First Amended Complaint. (Doc. 23.) Plaintiff's motions for leave to amend are GRANTED IN PART AND DENIED IN PART. (Docs. 27, 34.) Plaintiff must file a SAC setting forth her claims, consistent with this Opinion and Order and the court's Local Rules, within twenty (20) days of the date of this Opinion and Order. *See Fournerat v. Fleck*, 2020 WL 4495483, at *10 (C.D. Cal. July 7, 2020) (noting that "[i]n any amended complaint, Plaintiff should identify the nature of his remaining legal claim[s] and confine his allegations to those operative facts supporting"

those claims). Leave to amend has not been granted for any additional claims or any additional Defendants.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 12th day of March, 2021.

Christina Reiss, District Judge
United States District Court